**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| DAN RYAN BUILDERS WEST VIRGINIA, LLC, *f/k/a* DAN RYAN BUILDERS INC. and DAN RYAN BUILDERS SOUTH CAROLINA, LLC, | ) ) ) ) ) | |
| | ) | No. 2:18-cv-00589-DCN |
| Plaintiffs, | ) ) | |
| | ) | **ORDER** |
| vs. | ) ) | |
| MAIN STREET AMERICA ASSURANCE COMPANY, SELECTIVE INSURANCE GROUP, INC., THE CINCINNATI INSURANCE COMPANY, FRANKENMUTH MUTUAL INSURANCE CO., STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, PENNSYLVANIA NATIONAL SECURITY INSURANCE COMPANY, and PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on plaintiffs Dan Ryan Builders West Virginia, LLC and Dan Ryan Builders South Carolina, LLC's (collectively, "DRB") motion for partial summary judgment, ECF No. 55, and defendant Frankenmuth Mutual Insurance Company's ("Frankenmuth") motion for summary judgment, ECF No. 118. For the reasons set forth below, the court denies DRB's motion for partial summary judgment and grants in part and denies in part Frankenmuth's motion for summary judgment.

## I.  BACKGROUND

This insurance dispute arises from a construction project managed by DRB, a construction company that primarily builds new homes. DRB secured a contract to

1

construct new homes in a community known as the Foxbank Subdivision in Berkeley County, South Carolina ("Foxbank" or the "Foxbank Subdivision"). In order to perform this contract, DRB hired various subcontractors. The defendants in this case are insurers of those subcontractors. Relevant to the instant motions, Frankenmuth is the insurer of Land/Site Services, Inc. ("Land Site"), one of DRB's subcontractors. Land Site maintained a commercial general liability ("CGL") policy with Frankenmuth (the "Frankenmuth Policy") during the time that it allegedly performed work for DRB on Foxbank.

On April 24, 2014, two Foxbank Subdivision homeowners filed suit against DRB in the Court of Common Pleas for Berkeley County, South Carolina (the "Dickerson Lawsuit"). The Dickerson Lawsuit is a class action on behalf of other similarly situated owners of homes that were built by DRB. The lawsuit alleges property damage, such as "slabs and building components moving and/or cracking . . repeatedly and/or continuously and continu[ing] to occur causing damage to building components, the finish and structural elements of the home[s]." ECF No. 54-1 at 9. On March 22, 2017, more Foxbank homeowners filed a second action against DRB and several subcontractors, alleging similar harms as in the Dickerson Lawsuit (the "Tipton Lawsuit"). The two lawsuits have been consolidated in state court (the "underlying lawsuit").

On or around November 27, 2013, after it received claims from the Foxbank Subdivision homeowners but before the homeowners filed suit, DRB notified Land Site and Land Site's insurance agent, Commonwealth – Brown & Brown, of the claims and tendered a demand for defense and indemnity under the Frankenmuth Policy. After the

Tipton Lawsuit was filed on March 22, 2017, DRB against notified Land Site and demanded defense and indemnity from Frankenmuth. Frankenmuth refused to defend and now argues that DRB is not an insured under the Frankenmuth Policy.

On March 1, 2018, DRB filed this lawsuit against the insurers of the subcontractors who allegedly performed work on the Foxbank project, seeking a declaratory judgment that the underlying lawsuits set forth claims that are covered under each of defendant's CGL policies and that defendants have a duty to defend and indemnify DRB in these underlying lawsuits. DRB also brought claims for bad faith refusal to pay first party benefits and for indemnification / contribution. On September 27, 2018, DRB filed an amended complaint, adding a fourth cause of action for promissory estoppel, arguing that defendants allowed certificates of insurance to be issued to DRB upon which DRB reasonably relied.

On October 3 and 26, 2018, DRB filed motions for partial summary judgment against all insurer-defendants, asking the court to declare that it is entitled to coverage. ECF Nos. 54, 55, 56, 57, 74, and 75, respectively. Each of the insurer-defendants have since also filed motions for summary judgment. ECF Nos. 118, 135, 138, 139, 140, and 143. The court held a hearing on DRB's motions on January 8, 2019 and a hearing on the defendants' motions on August 8, 2019. In all, twelve summary judgment motions await the court's resolution.

This order resolves two of those motions. On October 3, 2018, DRB filed a motion for partial summary judgment on its declaratory judgment claim against Frankenmuth. ECF No. 54. On October 31, 2018, Frankenmuth responded, ECF No. 78, and on December 12, 2018, DRB replied, ECF No. 109. On January 17, 2019,

Frankenmuth filed a cross-motion for summary judgment on all of DRB's claims against it. ECF No. 118. DRB responded on February 8, 2019, ECF No. 123, and Frankenmuth filed a reply on February 22, 2019, ECF No. 126. Thus, this matter is ripe for the court's review.

## II. STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, "'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial." Id. at 249. When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, it may discharge its burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

Any reasonable inferences are to be drawn in favor of the nonmoving party. Anderson, 477 U.S. at 255, Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir. 2012). However, to defeat summary judgment, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. See Anderson, 477 U.S. at 252; Stone, 105 F.3d at 191. Rather, "a party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)). If the adverse party fails to provide evidence establishing that the fact finder could reasonably decide in his favor, then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary requirements imposed by the substantive law.'" Id. (quoting Anderson, 477 U.S. at 248).

### III.  DISCUSSION

At the outset, the court wishes to clarify a matter of insurance law. It is well-settled in South Carolina that a liability insurer has a duty to defend its insured in a suit that alleges harms payable under the terms of the policy. B.L.G. Enterprises, Inc. v. First Fin. Ins. Co., 514 S.E.2d 327, 330 (S.C. 1999) (citing Sloan Constr. Co. v. Central Nat'l

Ins. Co. of Omaha, 236 S.E.2d 818 (S.C. 1977)). It is also well-settled South Carolina law that where the underlying complaint against an insured creates even the possibility of coverage, the insurer is obligated to defend. Union Ins. Co. v. Soleil Grp., Inc., 465 F. Supp. 2d 567, 572 (D.S.C. 2006) (quoting Isle of Palms Pest Control Co. v. Monticello Ins. Co., 459 S.E.2d 318, 319 (S.C. Ct. App. 1994)).

DRB and Frankenmuth both cite to these cases, among others,[1] in arguing for and against the existence of a duty to defend in this case. However, the law established by or applied in those cases, while at best instructive, is not directly on point. In each of those cases, there was no dispute that the plaintiff was an insured. The issue before those courts was whether some occurrence was covered by the policy between the undisputed insurer and insured. The issue here is different. To determine whether Frankenmuth owed a duty to defend DRB in the underlying suit, the court must first determine whether DRB was an insured with respect to the Frankenmuth Policy at all. In South Carolina, a party seeking coverage has the burden to show that it is an insured. State Farm Mut. Auto. Ins. Co. v. Logan, 444 F. Supp. 2d 622, 626 (D.S.C. 2006) (citing United States Fire Ins. Co. v. Macloskie, 465 S.E.2d 759, 760 (S.C. 1996)).[2] Therefore, the court must first analyze whether DRB is an insured with respect to the Frankenmuth Policy before it

---

[1] DRB also relies upon USAA Prop. & Cas. Ins. Co. v. Clegg, 661 S.E.2d 791 (S.C. 2008); Gordon-Gallup Realtors, Inc. v. Cincinnati Ins. Co., 265 S.E.2d 38, 39 (S.C. 1980); and C.D. Walters Const. Co. v. Fireman's Co. of Newark, New Jersey, 316 S.E.2d 709 (S.C. Ct. App. 1984). None of these cases are directly on point.

[2] Both of these cases dealt with a party's burden to prove that it was covered under an insurance policy's "omnibus clause" as an additional insured, finding that the burden fell on the party seeking coverage. Because an omnibus clause affords a third party to the insurance contract coverage in some circumstances, it is akin to the "additional insured" clause in the Frankenmuth Policy. Therefore, the court finds these cases persuasive and directly applicable to the current dispute.

considers whether the underlying lawsuit is covered under the Frankenmuth Policy. Finding that the first question depends on disputed issues of fact, the court need not reach the second.

In its motion for partial summary judgment, DRB argues that Frankenmuth has a duty to defend DRB in the underlying lawsuit on two alternative grounds. First, it argues that the terms of the Frankenmuth Policy extend coverage to DRB as an "additional insured" to the policy. In the alternative, DRB argues that the issuance of several certificates of insurance by Frankenmuth's agent conferred upon it "additional insured" coverage by estoppel, irrespective of the terms of the Frankenmuth Policy. In its cross-motion for summary judgment, Frankenmuth argues that neither the terms of the Frankenmuth Policy nor the issuance of the certificates of insurance extend "additional insured" coverage to DRB as a matter of law. Therefore, Frankenmuth argues, it has no duty to defend DRB in the underlying lawsuit. Because whether DRB is entitled to coverage under the Frankenmuth Policy depends on genuine issues of disputed fact, summary judgment is inappropriate on DRB's declaratory judgment claim. However, for the following reasons, the court grants summary judgment in favor of Frankenmuth on DRB's promissory estoppel and bad faith claims.

**A. Coverage Under the Frankenmuth Policy**

"An insurance policy is a contract between the insured and the insurance company, and the terms of the policy are to be construed according to contract law." Auto Owners Ins. Co. v. Rollison, 663 S.E.2d 484, 487 (S.C. 2008). "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." Beaufort Cty. Sch. Dist. v. United Nat'l Ins. Co.,

709 S.E.2d 85, 90 (S.C. Ct. App. 2011) (citing <u>Schulmeyer v. State Farm Fire & Cas.</u>

<u>Co.</u>, 579 S.E.2d 132, 134 (S.C. 2003)).  "If the contract's language is clear and

unambiguous, the language alone, understood in its plain, ordinary, and popular sense,

determines the contract's force and effect."  <u>Id.</u> (citing <u>Schulmeyer</u>, 579 S.E.2d at 134).

However, an insurance contract which is "in any respect ambiguous or capable of two

meanings" must be construed strictly against its drafter, the insurer.  <u>Reynolds v. Wabash</u>

<u>Life Ins. Co.</u>, 161 S.E.2d 168, 169 (S.C. 1968)).

As the basis of its declaratory judgment claim, DRB argues that it is entitled to

coverage under the terms of the Frankenmuth Policy.  Although the Frankenmuth Policy

is an insurance policy between Frankenmuth and its primary insured, Land Site, DRB

claims it is entitled to coverage as an "additional insured" to the policy.  An endorsement

to Section II of the policy governs the addition of an organization as an "additional

insured" to the policy:

> **Section II – Who Is An Insured** is amended to include as an additional
> insured any person or organization for whom [Land Site is] performing
> work when [Land Site] and such person or organization have agreed <u>in</u>
> <u>writing in a contract or agreement</u> that such person or organization be added
> as an additional inured on [this] policy.

ECF No. 55-6 at 52 (emphasis added).  The policy continues:

> Such written contract or agreement must be:
>    a.  Currently in effect or becoming effective during the term of this
>       policy; and
>    b.  <u>Executed</u> prior to the "bodily injury", "property damage", or
>       "personal and advertising injury".

<u>Id.</u> (emphasis added).

In other words, the Frankenmuth Policy only extends additional insured coverage

to DRB if (1) an "executed" written contract existed between DRB and Land Site (2) that

required Land Site to add DRB as an additional insured to the Frankenmuth Policy.  DRB

first relies on a trade contract with Land Site to satisfy this requirement. ECF No. 55-4 (the "Land Site Trade Contract"). The Land Site Trade Contract, dated February 20, 2012, outlines an agreement under which Land Site would perform work for DRB. DRB is correct that the contract includes a provision that would require Land Site to add DRB as an additional insured to the Frankenmuth Policy. Although the contract contains the initials of a Land Site executive, importantly, on its "due execution" page where the parties were supposed to sign, the signature line for Land Site is blank.

Frankenmuth argues that the Land Site Trade Contract does not satisfy the terms of the Frankenmuth Policy for two reasons. First, it argues, the Frankenmuth Policy requires that the written contract on which coverage is based be "executed," which Frankenmuth contends should mean "signed." Second, Frankenmuth contends that the Land Site Trade Contract was never valid because the contract's own terms require that the contract be "executed," which it again contends should mean "signed." Because the court agrees with Frankenmuth's latter argument, it finds that the Land Site Trade Contract does not satisfy the terms of the Frankenmuth Policy and thus does not confer additional insured coverage to DRB as a matter of law. Therefore, DRB is not an insured under the Frankenmuth Policy, and Frankenmuth has no duty to defend DRB in the underlying lawsuit.

Before analyzing the operative facts, the court must delve into the minutia of contract interpretation to determine the appropriate meaning of the word "execute" as it appears in both the Frankenmuth Policy and the Land Site Trade Contract. Discussed above, the Frankenmuth Policy requires that the written contract between DRB and Land Site be "executed." The word also appears in the General Conditions to the Land Site

Trade Contract itself: "[t]he Contract shall not become valid and effective or in force until the same has been <u>executed</u> by [Land Site] returned to and <u>executed</u> by DRB . . . ." ECF No. 55-4 at 14 (emphasis added). The court discusses each instance of "execute" in turn.

Frankenmuth asks the court to interpret "executed" here to mean "signed." DRB contends that in this context a contract does not need to be signed in order to be "executed." Because ambiguous language of an insurance policy is construed strictly against the insurer, the court here agrees with DRB.

Black's Law Dictionary lists five alternative definitions of the word "execute," the two most pertinent of which provide conflicting meanings:

> **1.** To perform or complete (a contract or duty) <once the contract was fully executed, the parties owed no further contractual duties to each other>. . . .
>
> **3.** To make (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form <each party executed the contract without a signature witness>. . . .

EXECUTE, Black's Law Dictionary (11th ed. 2019). It would not make sense to apply the first definition—that the contract is executed once it is fully performed—since the purpose of construction insurance coverage is to cover the insured throughout the life of the contractual relationship between a general contractor and a subcontractor. Interpreting "execute" according to this definition would have the paradoxical effect of extending insurance coverage for work only after that work is completed. Therefore, the court applies the other viable definition, which contains two further sub-definitions: to make a legal document valid by signing it or, more generally, to bring a legal document into its final, legally enforceable form, which may not require a signature. Neither logic

nor the word's context within the policy gives the court any reason to favor one of these definitions over the other.

The law of South Carolina, however, demands that the court construe the terms of an insurance policy strictly against the insurer. See Am. Credit of Sumter, Inc. v. Nationwide Mut. Ins. Co., 663 S.E.2d 492, 495 (S.C. 2008) ("An insurance policy is to be liberally construed in favor of the insured and strictly construed against the insurer."); Kraft v. Hartford Ins. Companies, 305 S.E.2d 243 (S.C. 1983). Therefore, the court construes "executed" in this context to mean "brought into its final, legally enforceable form." In other words, the Land Site Trade Contract was "executed," according to terms of the Frankenmuth Policy, if and when it was made binding through the assent of each party. However, the court's analysis does not end there. Even if the court interprets the word "execute" here in accordance with this definition, the Land Site Trade Contract still fails to satisfy the terms of the Frankenmuth Policy as a matter of law because of the contract's own use of the word "execute," discussed below.

DRB is correct that the Land Site Trade Contract, if valid, would have required Land Site to add DRB as an additional insured under the Frankenmuth Policy, thus conferring additional insured coverage to DRB and triggering Frankenmuth's duty to defend.[3] The problem for DRB, however, is that Land Site never signed this contract, as required by the contract's own terms. Article 12 of the General Conditions to the Land Site Trade Contract provides that "[t]he Contract shall not become valid and effective or

_____

[3] Article 9 of the General Conditions to the Land Site Trade Contract requires that "[p]rior to commencing any Work, Contractor [Land Site] shall provide to DRB a Certificate of Insurance [ ] evidencing that Contractor maintains the insurance set forth below and naming DRB as an additional insured with respect to any general liability or automobile coverage." ECF No. 55-4 at 11.

in force until the same has been <u>executed by the Contractor</u> [Land Site] returned to and

<u>executed</u> by DRB . . . ."  ECF No. 55-4 at 14 (emphasis added).

Applying the above definitions, basic logic again leads the court to the third

definition listed in Black's Law Dictionary:  "3. To make (a legal document) valid by

signing; to bring (a legal document) into its final, legally enforceable form. . . ."

EXECUTE, Black's Law Dictionary (11th ed. 2019).  Again, the court is left with two

possible interpretations.  Between these two, the context of the term within the General

Conditions reveals the most logical meaning—that "execute" means "signed."  It would

make little sense to conclude that the provision requires the contract to be brought into its

final legally enforceable form by Land Site and returned to DRB so that it too might

bring the contract into its final legally enforceable form.  The court reaches the only

logical conclusion, that Article 12(b) of the General Conditions of the Land Site Contract

requires that the contract to be signed by both parties before it becomes valid and

enforceable.  Because no one from Land Site signed the "due execution" page of the

contract, it was never "executed" and thus was never "valid and effective or in force."

Therefore, the Land Site Trade Contract cannot serve as a basis under the Frankenmuth

Policy for extending additional insured coverage to DRB.

DRB argues that this lack of signature is irrelevant because there is enough

evidence to demonstrate that the parties intended to enter into the Land Site Trade

Contract.  Under South Carolina law, "a contract does not always require the signature of

both parties; it may be sufficient, if signed by one and accepted and acted on by the

other."  <u>Jaffe v. Gibbons</u>, 351 S.E.2d 343, 346 (Ct. App. 1986).  "A written contract, not

required to be in writing, is valid if one of the parties signs it and the other acquiesces

therein.  Acceptance of a contract by assenting to its terms, holding it and acting upon it, may be equivalent to a formal execution by one who did not sign it."  Coves Darden, LLC v. Ibanez, 2016 WL 4379419, at *9–10 (S.C. Ct. App. 2016) (quoting  Peddler, Inc. v. Rikard, 221 S.E.2d 115, 117 (S.C. 1975)).

While DRB is correct that a signature is not always required for a contract to be binding, in this instance the court need not look outside of the four corners of the contract to determine if the parties did in fact intend to enter into the Land Site Trade Contract because the very terms of the General Conditions to the contract mandate that "[t]he Contract shall not become valid and effective or in force until the same has been executed," which the court interprets to mean "signed."  ECF No. 55-4 at 14 (emphasis added).  This provision is a clear condition precedent to the contract's validity.  See M & M Grp., Inc. v. Holmes, 666 S.E.2d 262, 266 (S.C. Ct. App. 2008)  ("The question of whether a provision in a contract constitutes a condition precedent is a question of construction dependent on the intent of the parties to be gathered from the language they employ.").  Therefore, the Land Site Trade Contract was never valid and never extended additional insured coverage to DRB.

DRB has also presented several other documents from DRB and Land Site's contractor-subcontractor relationship:  a Vendor / Subcontractor form, ECF No 55-4 at 1; a payment agreement, id. at 44; a scope of work procedures document, id. at 30; and two bid sheets, id. at 33, 40.  With respect to these documents, DRB asserts two arguments.  First, DRB argues that the documents prove that DRB and Land Site in fact entered into the Land Site Trade Contract, despite the contract lacking Land Site's signature.  Second,

DRB argues that the documents themselves satisfy the terms of the Frankenmuth Policy, triggering additional insured coverage. Both arguments are unconvincing.

With respect to DRB's first argument, none of the presented documents can overcome the fact that the Land Site Trade Contract was never valid according to its own terms. The General Conditions to the Land Site Trade contract require the contract to be "executed"—here meaning "signed"—which it never was. Because a clear condition precedent to the contract was left unfulfilled, the court cannot enforce the contract's terms. To be sure, DRB and Land Site maintained a contractual relationship at the time Land Site performed work at Foxbank. However, no amount of evidence of that relationship can save the Land Site Trade Contract, which was never valid. No document that DRB could produce would require the court to enforce the terms of an invalid written contract. Therefore, the court rejects this argument.

DRB's second argument with respect to these documents—that they in themselves satisfy the terms of the Frankenmuth Policy—is also unconvincing. None of the documents alone are sufficient to confer additional insured status to DRB under the Frankenmuth Policy because none require Land Site to add DRB to the policy as an additional insured. To be clear, the issue before the court is not whether DRB and Land Site maintained a contractual relationship. It is uncontested that DRB and Land Site entered into various agreements under which Land Site performed work for DRB at Foxbank. The narrow issue critical here is whether there existed a valid written contract between Land Site and DRB that required Land Site to add DRB as an additional insured to the Frankenmuth Policy. The Frankenmuth Policy requires more than a mere contract to perform work; the only contract that would extend additional insured coverage to DRB

is one between DRB and Land Site that requires Land Site to add DRB as an additional insured. None of the presented documents, aside from the Land Site Trade Contract, which was never valid, contain such a provision. In the absence of any evidence that Land Site assented to such a provision, the court will not impose one upon it.

Although the court finds that none of the documents that DRB has presented are sufficient to confer additional insured coverage to DRB under the Frankenmuth Policy, there is evidence in the record of a contract that would satisfy the terms of the Frankenmuth Policy. DRB has presented testimony of Edwin Woods, its South Region President, that DRB and Land Site entered into a trade contract prior to Land Site's work at Foxbank. According to Woods, that trade contract contained provisions that required Land Site to maintain a CGL policy and add DRB to that policy as an additional insured.

> 6. DRB contracted with the following pertinent subcontractors who performed work on the Foxbank Subdivision[:] A.C. & A. Concrete Inc.[], BR's Clearing and Grading, Inc.[], Firm Foundations, Inc.[], Land Site Services, LLC[], Southern Atlantic Construction, LLC[], and Marcinak Construction Company.

> 7. As a pre-requisite to performing work on the Foxbank Subdivision, DRB required each of the aforementioned subcontractors to execute a copy of DRB's Trade Contract, all of which contained DRB's General Conditions DRB Form C-2 . . . ."

> . . .

> 11. DRB's General Conditions Form C-2, which was a part of the Trade Contracts DRB required each of its subcontractors to execute in order to perform work on Foxbank Subdivision required DRB's subcontractors to do the following, without limitation:

>> a. Maintain CGL insurance coverage, including completed operations coverage;

>> b. To insure DRB with primary coverage as an additional insured on the subcontractors' CGL insurance polies; and

c. To provide DRB with a certificate of insurance showing these coverages were in place prior to commencing work on the Foxbank Subdivision . . . ."

ECF No. 109-2, Woods Aff. ¶¶ 6–11.[4]  If such a trade contract between DRB and Land Site existed, as Woods has testified, it would be sufficient to confer additional insured coverage to DRB under the Frankenmuth Policy.  Explaining why DRB has not presented such a trade contract as evidence in this matter, Woods testified that:

18. Over the years since work on the Foxbank Subdivision was completed, some records of Trade Contracts entered into between DRB and its subcontractors have been lost and/or are missing, despite DRB's extensive efforts to locate any and all records pertinent to this lawsuit and the [underlying lawsuit].

19. As a result, any and all records of Trade Contracts between DRB and the aforementioned subcontractors that are incomplete and/or are missing pages have simply been lost or are unable to be located.

Id. at ¶¶ 18–19.[5]  Discussed above, the Frankenmuth Policy requires the existence of a contract between DRB and Land Site under which Land Site was required to add DRB to

---

[4] The court admits to some hesitation in considering this evidence.  DRB did not argue that Woods' testimony created a genuine issue of disputed fact with respect to the existence of a trade contract in any of its briefs on the instant motions.  Instead, DRB attached the affidavit to its repose to Frankenmuth's motion for summary judgment and cited to it for other arguments.  ECF No. 109-2.  Rule 56(c)(3) states that on summary judgment, "the court need consider only the cited materials. . . ."  Fed. R. Civ. P. 56(c)(3).  The court is wary of allowing a party to create a genuine dispute of material fact without providing the opposing party a fair opportunity to respond to the evidence.  On the other hand, DRB did attach the affidavit to its response to Frankenmuth's motion for summary judgment, and DRB makes substantive arguments with respect to the testimony in response to another defendant's summary judgment motion.  See ECF No. 161 at 20.  The court concludes that the greater sin would be to usurp the role of the jury and grant summary judgment in the face of a clear issue of disputed fact.  Rule 56(c)(3) continues, ". . . but the court may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  The court exercises the discretion the latter clause of Rule 56(c)(3) affords it and considers Woods' affidavit, despite DRB not arguing that the testimony creates a genuine issue of material fact.

[5] The court's consideration of this evidence does not run afoul of the best evidence rule, which holds that secondary evidence, like testimony evidence, is

16

the Frankenmuth Policy as an additional insured; it does not require that DRB present such a contract. So long as a trade contract that meets the requirements of the Frankenmuth Policy existed, as Woods has testified, DRB would be entitled to coverage as an additional insured to the policy. Woods' testimony, therefore, creates a genuine dispute as to whether there existed a contract that would confer additional insured coverage to DRB under the Frankenmuth Policy.

Therefore, DRB has presented evidence that a valid written contract between it and Land Site existed that would extend additional insured coverage to DRB under the Frankenmuth Policy. For these reasons, a genuine issue of material fact underlies DRB's status as an additional insured to the Frankenmuth Policy. As such, the court cannot grant summary judgment in favor of Frankenmuth on DRB's declaratory judgment claim.

### B. Coverage Based on the Certificates of Insurance

Because the court cannot determine whether a written contract existed to confer additional insured coverage to DRB under the Frankenmuth Policy, it must now consider whether DRB is entitled to coverage by estoppel. DRB argues that the issuance of certificates of insurance, each of which espouses additional insured coverage, confers additional insured coverage to DRB because DRB reasonably relied on certificates' statements of coverage. In other words, DRB argues that the issuance of certificates of insurance estops Frankenmuth from denying DRB additional insured coverage. The court disagrees.

---

admissible to prove the contents of a writing where "all the originals are lost or destroyed, and not by the proponent acting in bad faith." Fed. R. Evid. 1004. Here, there is no evidence that DRB acted in bad faith in losing the trade contracts it claims it had with its subcontractors. Therefore, the fact that DRB cannot produce those contracts goes to the weight of the evidence, not its admissibility.

A certificate of insurance is a "document acknowledging that an insurance policy has been written[] and setting forth in general terms what the policy covers." CERTIFICATE, Black's Law Dictionary (11th ed. 2019).  Generally, courts treat certificates of insurance as mere evidence of insurance coverage rather than operative documents that establish coverage.  The Supreme Court, applying Pennsylvania law, has held that the terms of an insurance policy control over a certificate of insurance, finding that "a certificate [of insurance] is not part of the contract of, or necessary to, the insurance."  Boseman v. Connecticut Gen. Life Ins. Co., 301 U.S. 196, 203 (1937); see also 17 Couch on Ins. § 242:33, Loss Payee as Third-Party Beneficiary ("Where an entity requires another to procure insurance naming it an additional insured, that party should not rely on a mere certificate of insurance, but should insist on a copy of the policy.  A certificate of insurance is not part of the policy. . . .").  When in conflict, the terms of the policy, not the certificate, control.  See Taylor v. Kinsella, 742 F.2d 709, 711 (2d Cir. 1984).

The analysis becomes more complex, however, when the issue is whether a certificate of insurance confers coverage to a supposed additional insured who would not otherwise be covered under the policy.  South Carolina courts have not confronted the issue of whether certificates of insurance that espouse additional insured coverage are sufficient to confer coverage upon their holder by estoppel.  However, the general constructs of the doctrine of estoppel in South Carolina are instructive.

"In appropriate circumstances, estoppel can be used to prevent the insurer from denying coverage to the insured."  Stringer v. State Farm Mut. Auto. Ins. Co., 687 S.E.2d

18

58, 61 (S.C. Ct. App. 2009) (citing <u>Koren v. Nat'l Home Life Assurance Co.</u>, 288 S.E.2d

392, 394 (S.C. 1982)).

> The essential elements of estoppel as related to the party estopped are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, the essential elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) prejudicial change in position.

<u>S. Dev. Land & Golf Co. v. S.C. Pub. Serv. Auth.</u>, 426 S.E.2d 748, 750 (S.C. 1993)

(internal citations omitted).  Further, "the reliance by the party claiming estoppel must be

reasonable, and it must proceed in good faith."  <u>Provident Life & Acc. Ins. Co. v. Driver</u>,

451 S.E.2d 924, 928 (S.C. Ct. App. 1994) (citing <u>S. Dev. Land & Golf Co. v. S.C. Pub.</u>

<u>Serv. Auth.</u>, 426 S.E.2d 748, 751 (S.C. 1993)).

Courts outside of South Carolina are split regarding whether an insurer can be

estopped from denying coverage to a certificate holder where the certificate of insurance

purports to extend additional insured coverage.  Some courts have estopped insurers from

denying coverage where a certificate of insurance identifies a third party as an additional

insured . <u>See</u> <u>Sumitomo Marine & Fire Ins. Co. of Am. v. S. Guar. Ins. Co. of Georgia</u>,

337 F. Supp. 2d 1339 (N.D. Ga. 2004) (applying Georgia law); <u>Blackburn, Nickels &</u>

<u>Smith, Inc. v. Nat'l Farmers Union Prop. & Cas. Co.</u>, 482 N.W.2d 600, 604 (N.D. 1992)

(applying North Dakota law); <u>Marlin v. Wetzel Cty. Bd. of Educ.</u>, 569 S.E.2d 462, 472

(W. Va. 2002).  Other courts have refused to apply estoppel to confer coverage upon a

certificate holder.  <u>See</u> <u>Mulvey Const., Inc. v. Bituminous Cas. Corp.</u>, 571 F. App'x 150

(4th Cir. 2014) (applying Virginia law); <u>Vinco Inc. v. Royal Ins. Co. of Am.</u>, 29 F. App'x

19

753 (2d Cir. 2002) (applying Connecticut law); <u>TIG Ins. Co. v. Sedgwick James of Washington</u>, 184 F. Supp. 2d 591 (S.D. Tex. 2001), aff'd, 276 F.3d 754 (5th Cir. 2002) (applying Texas law); <u>G.E. Tignall & Co. v. Reliance Nat. Ins. Co.</u>, 102 F. Supp. 2d 300, 304 (D. Md. 2000) (applying Maryland law); <u>Am. Country Ins. Co. v. Kraemer Bros.</u>, 699 N.E.2d 1056, 1060 (Ill. 1998).

Notably, the courts that refused to apply the doctrine of estoppel to extend coverage found that the supposed additional insureds' reliance on the certificates was not reasonable due to disclaimers printed on the certificates.  <u>See</u> <u>Mulvey Const.</u>, 571 F. App'x at 159 ("The certificates of insurance included [a] direct and specific disclaimer . . . . We, like the district court, must conclude that Virginia would not recognize the use of estoppel to change the policy in the circumstances of this case."); <u>TIG Ins. Co.</u>, 184 F. Supp. 2d at 597–98 ("The certificate of insurance [] clearly states that the certificate is issued 'as a matter of information only,' and that it does not purport to 'amend, extend, or alter' the terms of any insurance policies listed therein."); <u>Kraemer Bros.</u>, 699 N.E.2d at 1060 ("If [a] certificate includes a disclaimer, the insured may not rely on representations made in the certificate but must look to the policy itself to determine the scope of coverage.").

DRB has presented four certificates of insurance, which DRB claims Land Site provided to DRB to indicate that the Frankenmuth Policy extended coverage to DRB as an additional insured.  DRB contends that Christopher C. Cook of the Commonwealth – Brown & Brown insurance agency issued these certificates of insurance to Land Site,

who in turn provided them to DRB.[6]  Indeed, the certificates indicate that DRB is covered

under the Frankenmuth Policy as an additional insured.  <u>See</u> ECF No. 55-7 at 1, 2, 3, and

4.  Importantly, though, the certificates all contain two explicit disclaimers, located at the

top of each document in conspicuous script:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(s), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.
>
> …
>
> IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. . . . A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsements.

<u>Id.</u>

The court finds that these conspicuous disclaimers preclude a finding of estoppel

because they render DRB's reliance upon the certificates of insurance unreasonable.  Not

only do the certificates indicate that they are issued as "matter[s] of information only",

but they also give clear and specific notice to supposed additional insureds that the

certificates "do[] not confer rights" without an endorsement to the policy.  Further, the

disclaimers appear in conspicuous font on the top of each certificate.  The court cannot

---

[6] The parties dispute whether Christopher C. Cook is an agent of Frankenmuth, such that his actions would be attributable to Frankenmuth.  However, the court declines to address this issue because even assuming <u>arguendo</u> that Christopher Cook is an agent of Frankenmuth, the court still finds that the issuance of the certificates of insurance do not confer coverage to DRB, as discussed in detail below.

imagine that South Carolina law would stretch the doctrine of equitable estoppel so far as to cover reliance upon certificates with such clear and conspicuous disclaimers.

DRB relies upon two cases for its argument that the certificates of insurance confer coverage by estoppel: Sumitomo Marine & Fire Ins. Co. of Am. v. S. Guar. Ins. Co. of Georgia, 337 F. Supp. 2d 1339 (N.D. Ga. 2004) and Marlin v. Wetzel Cty. Bd. of Educ., 569 S.E.2d 462, 472 (W. Va. 2002). Because neither case analyzes the issue of the certificates' disclaimers, the court finds these cases unconvincing.

In Sumitomo, the court held that an insurer was estopped from denying coverage to a supposed additional insured where the insurer's agent issued the supposed additional insured certificates of insurance indicating that coverage existed. 337 F. Supp. 2d at 1355–56. The court reasoned that the insurer's agent had both actual and apparent authority from the insurer to issue the certificates and that the supposed additional insured reasonably relied thereon. The court reasoned that although a certificate of insurance is generally regarded as mere evidence of coverage, certificates in the construction context are used by general contractors as evidence that they are covered under their subcontractor's CGL policy. Without a certificate, the court posited, a general contractor would not permit its subcontractor to perform work. Therefore, the court found the general contractor's reliance on a certificate of insurance reasonable.

The court in Marlin, applying the same concepts to West Virginia law, stated:

> a certificate of insurance is evidence of insurance coverage, and is not a separate and distinct contract for insurance. However, because a certificate of insurance is an insurance company's written representation that a policyholder has certain insurance coverage in effect at the time the certificate is issued, the insurance company may be estopped from later denying the existence of that coverage when the policyholder or the recipient of a certificate has reasonably relied to their detriment upon a misrepresentation in the certificate.

569 S.E.2d at 472–73.  Neither of the cases on which DRB relies analyzed the issue of the certificates' disclaimers beyond a passing reference, <u>Sumitomo</u>, 337 F. Supp. 2d at 1355 (stating only, "[d]efendants then point out that the Certificates of Insurance also expressly included a disclaimer that they are for information purposes only and do not amend the respective policies of insurance.  The parties have not submitted any binding authority squarely on point."), and this court cannot ascertain the nature or scope of the disclaimers that were present in those cases.  As such, neither case gives the court reason to find that DRB's reliance on the certificates of insurance was reasonable in the face of the clear and conspicuous disclaimers printed upon each. Therefore, the court finds that the certificates of insurance did not confer additional insured coverage to DRB through estoppel.

### C.  Frankenmuth's Failure to Provide DRB with the Policy

Additionally, DRB argues that Frankenmuth cannot rely upon a policy provision to exclude it from coverage when it did not produce a copy of the policy to DRB.  This argument is unconvincing, as are the cases DRB cites in support.  DRB argues that "Frankenmuth [] cannot rely upon policy exclusions when [the exclusions] have not been communicated to [DRB]."  ECF No. 123 at 10.  As an initial matter, the court points out that the Frankenmuth Policy does not exclude DRB from coverage by means of an exclusion to the policy.  An exclusion is an area of coverage that the insurer removes from a policy that would otherwise be covered by the policy.  <u>See</u> EXCLUSION, Black's Law Dictionary (11th ed. 2019).  The Frankenmuth Policy, conversely, never extended coverage to DRB in the first place.  Thus, DRB's lack of insurance coverage is not the

result of an exclusion.  The cases on which DRB relies suffer from a similar fatal flaw and miss the mark.[7]

In each of the cases on which DRB relies, an insurer failed to provide a copy of the policy to its insured.  Instead, the insured held a certificate of insurance.  Under those circumstances those courts found that the certificates held by the insureds controlled over exclusions found in the policy, to which the insureds did not have access.  The present circumstances are different.  Here, the question is whether DRB is an insured, not whether a certain occurrence is covered or excluded under the policy.  Further, unlike the plaintiffs in those cases, DRB's status as an insured is uncertain.  It would make little sense for the court to hold that Frankenmuth was required to provide a copy of the Frankenmuth Policy to DRB, a third party who the court has not found is covered under the Frankenmuth Policy.   The doctrine employed by these cases is plainly inapplicable to the case at hand.  Therefore, the court rejects this argument.

In sum, the court cannot grant summary judgment to either party on DRB's declaratory judgment claim.  Summary judgment is not warranted on behalf of Frankenmuth because whether DRB is entitled to coverage as an additional insured to the Frankenmuth Policy depends on disputed issues of material fact.  DRB is not entitled to summary judgement for the same reason, and because its alternative estoppel argument fails.  As such, DRB's declaratory judgment claim as to Frankenmuth's duty to defend and indemnify DRB in the underlying suit survives and proceeds to trial.

_____

[7] In support of its argument, DRB cites to:  Brown Mach. Works & Supply Co. v. Ins. Co. of N. Am., 659 So. 2d 51, 56 (Ala. 1995); Moore v. Energy Mut. Ins. Co., 814 P.2d 1141, 1144 (Utah Ct. App. 1991); and J. M. Corbett Co. v. Ins. Co. of N. Am., 357 N.E.2d 125, 128 (Ill. App. 1976).  Because each case suffers from the same fatal flaw, the court discusses them together.

### D. DRB's Remaining Claims

Having resolved the legal issues put before it, the court must now determine the practical effect of its findings. By way of clarification, DRB and Frankenmuth have both filed motions for summary judgment. DRB's motion requests summary judgment solely on its declaratory judgment claim, which asks the court to find that Frankenmuth has a duty to defend DRB in the underlying lawsuit. Frankenmuth's motion, on the other hand, asks the court to grant summary judgment "with regard to DRB's claims against it." ECF No. 118 at 1. Despite posturing its motion as one for summary judgment on all of DRB's claims, Frankenmuth only makes substantive arguments with respect to DRB's declaratory judgment claim, regarding Frankenmuth's alleged duty to defend. Frankenmuth does not specifically request summary judgment on DRB's other claims for bad faith, indemnification, or promissory estoppel. Nor does Frankenmuth's motion explicitly address these claims.

However, this order's analysis into DRB's declaratory judgment claim has required the court to determine issues that are part and parcel to DRB's promissory estoppel claim. Specifically, this order has found that Frankenmuth is not estopped from denying coverage to DRB because DRB's reliance on the certificates of insurance was unreasonable as a matter of law. This finding goes to the very heart of DRB's promissory estoppel claim. "The elements of promissory estoppel are (1) an unambiguous promise by the promisor; (2) reasonable reliance on the promise by the promisee; (3) reliance by the promisee was expected by and foreseeable to the promisor; and (4) injury caused to the promisee by his reasonable reliance." N. Am. Rescue Prod., Inc. v. Richardson, 769 S.E.2d 237, 241 (S.C. 2015) (citing Davis v. Greenwood Sch.

<u>Dist. 50</u>, 634, 620 S.E.2d 65, 67 (S.C. 2005)).  DRB's claim for promissory estoppel cannot stand because this order finds that its reliance on the certificates of insurance was not reasonable.  Therefore, the court's finding renders the claim untenable.

Next, the court turns to DRB's bad faith claim.  "The elements of a bad faith refusal to pay action are (1) the existence of a contract of insurance between the parties; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action; and (4) causing damage to the insured." <u>Crossley v. State Farm Mut. Auto. Ins. Co.</u>, 415 S.E.2d 393, 396–97 (S.C. 1992).  "But if there is a reasonable ground for contesting a claim, there is no bad faith." <u>Helena Chem. Co. v. Allianz Underwriters Ins. Co.</u>, 594 S.E.2d 455, 462 (S.C. 2004) (quoting <u>Crossley v. State Farm Mut. Auto. Ins. Co.</u>, 415 S.E.2d 393, 397 (S.C. 1992) (internal quotation marks omitted).  DRB has admitted that it has lost some of the documents that it claims would otherwise establish coverage in this case.  Although the Frankenmuth policy does not require DRB to present a contract to prove it is entitled to additional insured coverage, it would make little sense to hold that Frankenmuth's denial of coverage, in the absence of such a contract, was unreasonable.  Based on that fact and the lengthy analysis above, Frankenmuth had reasonable grounds for its conclusion that DRB was not an additional insured under the Frankenmuth Policy.  Therefore, DRB's claim for bad faith fails.

As such, the court finds itself at a procedural fork in the road[8] and must choose between the lesser of two evils.  The court must either grant summary judgment on

---

[8] As the sagacious Yogi Berra once said, "When you come to a fork in the road, take it."

DRB's claims of promissory estoppel and bad faith in favor of a party who did not explicitly request it or deny summary judgment and send legally untenable claims to a jury. The court determines that the latter is the greater evil, so it proceeds with the former. Thus, because the court's findings necessitate it, the court grants summary judgment in favor of Frankenmuth with respect to DRB's claims for promissory estoppel and bad faith.

The same cannot be said for DRB's remaining claim for indemnification / contribution. Although the court is unsure of the nature or validity of the indemnification DRB seeks—be it contractual or equitable—the court is unwilling to grant summary judgment on a claim that may be viable in favor of a party who has not explicitly requested it. Without such a request or findings that necessitate summary judgment, the court declines to consider DRB's claim for indemnification / contribution at present and denies Frankenmuth's motion for summary judgment with respect to the same.

### E. The Sloan Doctrine

Finally, Frankenmuth argues that DRB is precluded from all recovery based on the Sloan doctrine.[9] See Sloan Const. Co. v. Cent. Nat. Ins. Co. of Omaha, 236 S.E.2d 818 (S.C. 1977). The Sloan doctrine holds that:

> where two companies insure the identical risk and both policies provide for furnishing the insured with a defense, neither company, absent a contractual relationship, can require contribution from the other for the expenses of the defense where one denies liability and refuses to defend. The duty to defend is personal to both insurers; neither is entitled to divide the duty.

---

[9] While Frankenmuth applies its other arguments solely to DRB's declaratory judgment claim, it argues that the Sloan doctrine precludes DRB from all "right[s] to recovery" in this action. ECF No. 118 at 14. Therefore, the court will construe this argument as applying to each of DRB's claims, including its claim for indemnity / contribution, even though Frankenmuth fails to explicitly so state.

Id. at 820. Under the Sloan doctrine, if an insured receives a full defense from one insurer in an underlying lawsuit, it may not seek contribution or indemnification from another insurer who refused to defend. According to the well-reasoned logic of the Sloan court, an insured who receives a full defense from one insured is not injured by its other insurer's failure to defend.

Here, Frankenmuth argues "[u]pon information and belief" that DRB has received a full defense in the underlying lawsuit from a different insurer, Clarendon National Insurance Company ("Clarendon"). ECF No. 118 at 11. Frankenmuth further claims that DRB "entered into a loan agreement with its insurer [Clarendon's predecessor insurance company] Sussex Insurance Company [] for the funding of this declaratory judgment action" under which DRB would pay Sussex back for any recovery it receives in this action. Id. at 13. DRB, on the other hand, claims that it has incurred substantial damages in the underlying lawsuit and that its insurer did not provide a full defense in the underlying lawsuit.[10] Despite Frankenmuth's claims, it has presented no evidence that DRB has received a complete defense from another insurer, nor has it produced any evidence of an alleged agreement between DRB and its primary insurer. The court cannot grant summary judgment based upon a party's "information and belief." Summary judgment must be based on evidence. Because Frankenmuth presents none here, the court rejects its argument.

---

[10] DRB claims that its primary insurer did not indemnify it for a significant period of time after the Dickerson lawsuit was filed. As a result, DRB claims, its primary insurer did not tender a full and complete defense and it incurred significant damages as a result.

In sum, after the court's resolution of the instant motions, DRB's declaratory judgment claim and indemnification / contribution claim survive and will proceed to trial; DRB's promissory estoppel and bad faith causes of action are resolved on summary judgment in favor of Frankenmuth.

## IV.   CONCLUSION

For the foregoing reasons the court **DENIES** plaintiffs' motion for summary judgment, and **GRANTS** defendant's motion with respect to plaintiffs' second and fourth causes of action and **DENIES** defendant's motion with respect to plaintiffs' first and third causes of action.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**April 3, 2020**
**Charleston, South Carolina**