**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| DAN RYAN BUILDERS WEST VIRGINIA, LLC, *f/k/a* DAN RYAN BUILDERS INC. and DAN RYAN BUILDERS SOUTH CAROLINA, LLC, | ) ) ) ) ) | |
| | ) | No. 2:18-cv-00589-DCN |
| Plaintiffs, | ) ) | |
| | ) | **ORDER** |
| vs. | ) ) | |
| MAIN STREET AMERICA ASSURANCE COMPANY, SELECTIVE INSURANCE GROUP, INC., THE CINCINNATI INSURANCE COMPANY, FRANKENMUTH MUTUAL INSURANCE CO., STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, PENNSYLVANIA NATIONAL SECURITY INSURANCE COMPANY, and PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on plaintiffs Dan Ryan Builders West Virginia, LLC and Dan Ryan Builders South Carolina, LLC's (collectively, "DRB") motion for partial summary judgment, ECF No. 74, and defendants Pennsylvania National Security Insurance Company ("Penn National Sec.") and Pennsylvania National Mutual Casualty Insurance Company's ("Penn National Mut.") (collectively, "Penn National") motion for summary judgment, ECF No. 140. For the reasons set forth below, the court denies DRB's motion for partial summary judgment and grants in part and denies in part Penn National's motion for summary judgment.

# I.  BACKGROUND

This insurance dispute arises from a construction project managed by DRB, a construction company that primarily builds new homes.  DRB secured a contract to construct new homes in a community known as the Foxbank Subdivision in Berkeley County, South Carolina ("Foxbank" or the "Foxbank Subdivision").  In order to perform this contract, DRB hired various subcontractors.  The defendants in this case are insurers of those subcontractors.  Relevant to the instant motions, Penn National is the insurer of Marcinak Construction Company, Inc. ("Marcinak"), one of DRB's subcontractors.  Marcinak maintained a commercial general liability ("CGL") policy with Penn National (the "Penn National Policy") during the time that it allegedly performed work for DRB on Foxbank.[1]

On April 24, 2014, two Foxbank Subdivision homeowners filed suit against DRB in the Court of Common Pleas for Berkeley County, South Carolina (the "Dickerson Lawsuit").  The Dickerson Lawsuit is a class action on behalf of other similarly situated owners of homes that were built by DRB.  The lawsuit alleges property damage, such as "slabs and building components moving and/or cracking . . repeatedly and/or continuously and continu[ing] to occur causing damage to building components, the finish and structural elements of the home[s]."  ECF No. 54-1 at 9.  On March 22, 2017, more Foxbank homeowners filed a second action against DRB and several

---

[1] Marcinak maintained two separate insurance policies with Penn National, a CGL policy with Penn National Sec. and an umbrella policy with Penn National Mut.  The umbrella policy merely provides Marcinak with coverage in excess of the CGL policy. Therefore, the relevant inquiry here is whether DRB is entitled to coverage under the CGL policy between Marcink and Penn National Sec.  For simplicity's sake, the court refers to that CGL policy as the "Penn National Policy."

subcontractors, alleging similar harms as in the Dickerson Lawsuit (the "Tipton Lawsuit").  The two lawsuits have been consolidated in state court (the "underlying lawsuit").

On or around December 13, 2017, DRB tendered written demand upon Marcinak for defense and indemnity with respect to the Tipton lawsuit.  DRB's written demand, although sent to Marcinak and not Penn National, demanded defense and indemnity from Marcinak's insurers.  On January 12, 2018, counsel for Marcinak sent a response letter to DRB, rejecting its demand.  DRB did not make a demand upon Marcinak or Penn National with respect to the earlier-filed Dickerson lawsuit.  To date, Penn National has not provided a defense or indemnity to DRB in the underlying lawsuit.

On March 1, 2018, DRB filed this lawsuit against the insurers of the subcontractors who allegedly performed work on the Foxbank project, seeking a declaratory judgment that the underlying lawsuits set forth claims that are covered under each of defendant's CGL policies and that defendants have a duty to defend and indemnify DRB in these underlying lawsuits.  DRB also brought claims for bad faith refusal to pay first party benefits and for indemnification / contribution.  On September 27, 2018, DRB filed an amended complaint, adding a fourth cause of action for promissory estoppel, arguing that defendants allowed certificates of insurance to be issued to DRB upon which DRB reasonably relied.

On October 3 and 26, 2018, DRB filed motions for partial summary judgment against all insurer-defendants, asking the court to declare that it is entitled to coverage. ECF Nos. 54, 55, 56, 57, 74, and 75, respectively.  Each of the insurer-defendants has since also filed a motion for summary judgment.  ECF Nos. 118, 135, 138, 139, 140, and

143.  The court held a hearing on DRB's motions on January 8, 2019 and a hearing on the defendants' motions on August 8, 2019.  In all, twelve summary judgment motions await the court's resolution.

This order resolves two of those motions.  On October 26, 2018, DRB filed a motion for partial summary judgment on its declaratory judgment claim against Penn National.  ECF No. 74.  On November 21, 2018, Penn National responded, ECF No. 95, and on December 19, 2018, DRB replied, ECF No. 114.  On June 10, 2019, Penn National filed a cross-motion for summary judgment on all of DRB's claims against it.  ECF No. 140.  DRB responded on July, 8, 2019, ECF No. 159, and Penn National replied on July 19, 2019, ECF No. 164.  Thus, this matter has been fully briefed and is ripe for the court's review.

## II.  STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, "'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of

material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, it may discharge its burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

Any reasonable inferences are to be drawn in favor of the nonmoving party. Anderson, 477 U.S. at 255, Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir. 2012). However, to defeat summary judgment, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. See Anderson, 477 U.S. at 252; Stone, 105 F.3d at 191. Rather, "a party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)). If the adverse party fails to provide evidence establishing that the fact finder could reasonably decide in his favor, then summary judgment shall be entered "regardless

of '[a]ny proof or evidentiary requirements imposed by the substantive law.'" Id. (quoting Anderson, 477 U.S. at 248).

### III.  DISCUSSION

At the outset, the court wishes to clarify a matter of insurance law.  It is well-settled in South Carolina that a liability insurer has a duty to defend its insured in a suit that alleges harms payable under the terms of the policy.  B.L.G. Enterprises, Inc. v. First Fin. Ins. Co., 514 S.E.2d 327, 330 (S.C. 1999) (citing Sloan Constr. Co. v. Central Nat'l Ins. Co. of Omaha, 236 S.E.2d 818 (S.C. 1977)).  It is also well-settled South Carolina law that where the underlying complaint against an insured creates even the possibility of coverage, the insurer is obligated to defend.  Union Ins. Co. v. Soleil Grp., Inc., 465 F. Supp. 2d 567, 572 (D.S.C. 2006) (quoting Isle of Palms Pest Control Co. v. Monticello Ins. Co., 459 S.E.2d 318, 319 (S.C. Ct. App. 1994)).

DRB and Penn National both cite to these cases, among others,[2] in arguing for and against the existence of a duty to defend in this case.  However, the law established by or applied in those cases, while at best instructive, is not directly on point.  In each of those cases, there was no dispute that the plaintiff was an insured.  The issue before those courts was whether some occurrence was covered by the policy between the undisputed insurer and insured.  The issue here is different.  To determine whether Penn National owes a duty to defend DRB in the underlying suit, the court must first determine whether DRB was an insured with respect to the Penn National Policy at all.  In South Carolina, a

---

[2] DRB also relies upon USAA Prop. & Cas. Ins. Co. v. Clegg, 661 S.E.2d 791 (S.C. 2008); Gordon-Gallup Realtors, Inc. v. Cincinnati Ins. Co., 265 S.E.2d 38, 39 (S.C. 1980); and C.D. Walters Const. Co. v. Fireman's Ins. Co. of Newark, New Jersey, 316 S.E.2d 709 (S.C. Ct. App. 1984).  None of these cases are directly on point.

party seeking coverage has the burden to show that it is an insured. <u>State Farm Mut.</u> <u>Auto. Ins. Co. v. Logan</u>, 444 F. Supp. 2d 622, 626 (D.S.C. 2006) (citing <u>United States</u> <u>Fire Ins. Co. v. Macloskie</u>, 465 S.E.2d 759, 760 (S.C. 1996)).[3] Therefore, the court must first analyze whether DRB is an insured with respect to the Penn National Policy before it considers whether the underlying lawsuit is covered under the Penn National Policy. Answering the first question in the negative, the court does not reach the second.

In its motion for partial summary judgment, DRB argues that Penn National has a duty to defend DRB in the underlying lawsuit on two alternative grounds. First, it argues that the terms of the Penn National Policy extend coverage to DRB as an "additional insured" to the policy under the "Automatic Additional Insureds" endorsement. In the alternative, DRB argues that the issuance of several certificates of insurance by Penn National's insurance agent conferred upon it "additional insured" coverage by estoppel, irrespective of the terms of the Penn National Policy.[4] In its cross-motion for summary judgment, Penn National argues that DRB is not entitled to coverage under the Penn National Policy because DRB does not satisfy the terms of the "Automatic Additional Insured" endorsement and DRB failed to comply with the notice requirements of the

_____

[3] Both of these cases dealt with a party's burden to prove that it was covered under an insurance policy's "omnibus clause" as an additional insured, finding that the burden fell on the party seeking coverage. Because an omnibus clause affords a third party to the insurance contract coverage in some circumstances, it is akin to the Automatic Additional Insureds in the Penn National Policy. Therefore, the court finds these cases persuasive and directly applicable to the current dispute.

[4] In its response brief to DRB's summary judgment motion, Penn National incorporates "by reference all other arguments and facts raised by the similarly situated co-defendants. . . ." ECF No. 95 at 1. To the extent that the court does not address an argument that Penn National incorporates but does not explicitly make in its briefs, the court incorporates its rulings from its orders on the summary judgment motions of Penn National's similarly situated co-defendants and applies those findings with equal force to Penn National.

policy. Therefore, Penn National argues, it has no duty to defend DRB in the underlying lawsuit. Further, Penn National argues that each of DRB's claims is barred by the "Sloan Doctrine." For the following reasons, the court denies DRB's motion for summary judgment and grants in part and denies in part Penn National's motion for summary judgment.

## A. Coverage Under the Penn National Policy

"An insurance policy is a contract between the insured and the insurance company, and the terms of the policy are to be construed according to contract law." Auto Owners Ins. Co. v. Rollison, 663 S.E.2d 484, 487 (S.C. 2008). "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." Beaufort Cty. Sch. Dist. v. United Nat'l Ins. Co., 709 S.E.2d 85, 90 (S.C. Ct. App. 2011) (citing Schulmeyer v. State Farm Fire & Cas. Co., 579 S.E.2d 132, 134 (S.C. 2003)). "If the contract's language is clear and unambiguous, the language alone, understood in its plain, ordinary, and popular sense, determines the contract's force and effect." Id. (citing Schulmeyer, 579 S.E.2d at 134). However, an insurance contract which is "in any respect ambiguous or capable of two meanings" must be construed strictly against its drafter, the insurer. Reynolds v. Wabash Life Ins. Co., 161 S.E.2d 168, 169 (S.C. 1968)).

As the basis of its declaratory judgment claim, DRB argues that it is entitled to coverage under the terms of the Penn National Policy. Although the Penn National Policy is an insurance policy between Penn National and its primary insured, Marcinak, DRB claims it is entitled to coverage as an "additional insured" under the policy's Automatic Additional Insureds endorsement. That endorsement states:

**A.** The following provision is added to **Section II – WHO IS AN INSURED**:

> 1. Any person(s) or organization(s) (referred to below as additional insured) with whom you are required in a written contract or agreement to name as an additional insured for the "products-completed operations hazard", <u>but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "[Marcinak's] work", at the location or project designated and described in the agreement</u>, performed for that additional insured and included in the "products-completed operations hazard".

ECF No. 74-5 at 88 (emphasis added).

Stated less enigmatically, the Penn National Policy extends additional insured coverage to DRB if a written contract existed between DRB and Marcinak that required Marcinak to add DRB as an additional insured to the Penn National Policy. Critically, the Penn National Policy only extends additional insured coverage for "property damage" caused by Marcinak "at the location or project designated and described in the agreement." In other words, the endorsement does not extend coverage for property damage that occurs at a project or location that is not designated in the written contract between DRB and Marcinak.

DRB has presented a trade contract between it and Marcinak that it claims satisfies the terms of the Automatic Additional Insureds endorsement. <u>See</u> ECF No. 74-4 (the "Marcinak Trade Contract"). The parties do not dispute that the Marcinak Trade Contract is a valid contract between DRB and Marcinak. Further, there is no dispute that the Marcinak Trade Contract includes a provision that required Marcinak to add DRB as an additional insured to Marcinak's CGL policy. <u>See</u> <u>id.</u> at 16 ("[DRB] shall be added as an Additional Insured on General Liability, Auto Liability and Umbrella policies."). Thus, the Penn National Policy extends coverage to DRB for "property damage" that

Marcinak causes "at the location or project designated and described in the" Marcinak Trade Contract. The problem for DRB is that the Marcinak Trade Contract does not designate the location or project where Marcinak will perform work. There is no evidence that the Marcinak Trade Contract governs work Marcinak performed on the Foxbank project; instead, the Marcinak Trade Contract generally describes conditions for a contractor-subcontractor relationship between Marcinak and DRB. In short, the Marcinak Trade Contract cannot satisfy the terms of the Penn National Policy because the Automatic Additional Insureds endorsement requires the covered project to be "designated and described" in the written contract, and the Marcinak Trade Contract does not designate or describe Foxbank as the location of Marcinak's work. Therefore, the court finds that the endorsement does not extend additional insured coverage to DRB for property damages that occurred at the Foxbank project. See Burns v. State Farm Mut. Auto. Ins. Co., 377 S.E.2d 569 (S.C. 1989) ("Insurers have the right to limit their liability provided they do not contravene a statutory provision or public policy."); see also B.L.G. Enterprises, Inc. v. First Fin. Ins. Co., 514 S.E.2d 327, 330 (S.C. 1999) (enforcing limiting language in an endorsement against an insured).

In response, DRB argues that the Automatic Additional Insureds endorsement limitation could be reasonably interpreted to require the relevant location or project to be designated in a writing or in an oral agreement. DRB contends, "Based upon the plain language of the policy . . . there is no requirement that the location or project be designated or described in a written agreement. In fact, the word written does not even appear in the portion of the provision pertaining to where the location and/or project designation should be." ECF No. 114 at 11. The court finds this interpretation to be a

bridge too far and thus unreasonable. For one, the phrase "in writing in a contract or agreement", which is used in the clause previous, clearly indicates that a writing is necessary to satisfy the endorsement. Further, the only reasonable interpretation of a contractual requirement to "designate[] and describe[]" a location and/or project is that it requires the location or project to be designated or described in a writing. The plain meaning of the word "designate" infers a tangible medium. See DESIGNATE, Black's Law Dictionary (11th ed. 2019) ("To represent or refer to (something) using a particular symbol, sign, name, etc."). While the court is cognizant that ambiguities in an insurance policy are to be construed strictly against the insurer, Am. Credit of Sumter, Inc. v. Nationwide Mut. Ins. Co., 663 S.E.2d 492, 495 (S.C. 2008), it cannot insert ambiguity into an insurance policy where none exists, Beaufort Cty. Sch. Dist., 709 S.E.2d at 90. Therefore, the court rejects this argument and finds that the Automatic Additional Insureds Endorsement does not extend coverage to DRB. Thus, Penn National has no contractual duty to defend or indemnify DRB. Because the court finds that DRB is not entitled to additional insurance coverage, it does not reach Penn National's argument that DRB failed to provide proper notice for its claims.

**B. Coverage Based on the Certificates of Insurance**

Having found that DRB is not entitled to additional insured coverage under the terms of the Penn National Policy, the court must now consider whether DRB is entitled to coverage by estoppel. DRB argues that the issuance of certificates of insurance, each of which espouses additional insured coverage, confers additional insured coverage to DRB because DRB reasonably relied on certificates' statements of coverage. In other

words, DRB argues that the issuance of certificates of insurance estops Penn National from denying DRB additional insured coverage.  The court disagrees.

A certificate of insurance is a "document acknowledging that an insurance policy has been written[] and setting forth in general terms what the policy covers." CERTIFICATE, Black's Law Dictionary (11th ed. 2019).  Generally, courts treat certificates of insurance as mere evidence of insurance coverage rather than operative documents that establish coverage.  The Supreme Court, applying Pennsylvania law, has held that the terms of an insurance policy control over a certificate of insurance, finding that "a certificate [of insurance] is not part of the contract of, or necessary to, the insurance."  Boseman v. Connecticut Gen. Life Ins. Co., 301 U.S. 196, 203 (1937); see also 17 Couch on Ins. § 242:33, Loss Payee as Third-Party Beneficiary ("Where an entity requires another to procure insurance naming it an additional insured, that party should not rely on a mere certificate of insurance, but should insist on a copy of the policy.  A certificate of insurance is not part of the policy. . . .").  When in conflict, the terms of the policy, not the certificate, control.  See Taylor v. Kinsella, 742 F.2d 709, 711 (2d Cir. 1984).

The analysis becomes more complex, however, when the issue is whether a certificate of insurance confers coverage to a supposed additional insured who would not otherwise be covered under the policy.  South Carolina courts have not confronted the issue of whether certificates of insurance that espouse additional insured coverage are sufficient to confer coverage upon their holder by estoppel.  However, the general constructs of the doctrine of estoppel in South Carolina are instructive.

"In appropriate circumstances, estoppel can be used to prevent the insurer from denying coverage to the insured." Stringer v. State Farm Mut. Auto. Ins. Co., 687 S.E.2d 58, 61 (S.C. Ct. App. 2009) (citing Koren v. Nat'l Home Life Assurance Co., 288 S.E.2d 392, 394 (S.C. 1982)).

> The essential elements of estoppel as related to the party estopped are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, the essential elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) prejudicial change in position.

S. Dev. Land & Golf Co. v. S.C. Pub. Serv. Auth., 426 S.E.2d 748, 750 (S.C. 1993) (internal citations omitted).  Further, "the reliance by the party claiming estoppel must be reasonable, and it must proceed in good faith." Provident Life & Acc. Ins. Co. v. Driver, 451 S.E.2d 924, 928 (S.C. Ct. App. 1994) (citing S. Dev. Land & Golf Co. v. S.C. Pub. Serv. Auth., 426 S.E.2d 748, 751 (S.C. 1993)).

Courts outside of South Carolina are split regarding whether an insurer can be estopped from denying coverage to a certificate holder where the certificate of insurance purports to extend additional insured coverage.  Some courts have estopped insurers from denying coverage where a certificate of insurance identifies a third party as an additional insured.  See Sumitomo Marine & Fire Ins. Co. of Am. v. S. Guar. Ins. Co. of Georgia, 337 F. Supp. 2d 1339 (N.D. Ga. 2004) (applying Georgia law); Blackburn, Nickels & Smith, Inc. v. Nat'l Farmers Union Prop. & Cas. Co., 482 N.W.2d 600, 604 (N.D. 1992) (applying North Dakota law); Marlin v. Wetzel Cty. Bd. of Educ., 569 S.E.2d 462, 472 (W. Va. 2002).  Other courts have refused to apply estoppel to confer coverage upon a

certificate holder.  See Mulvey Const., Inc. v. Bituminous Cas. Corp., 571 F. App'x 150 (4th Cir. 2014) (applying Virginia law); Vinco Inc. v. Royal Ins. Co. of Am., 29 F. App'x 753 (2d Cir. 2002) (applying Connecticut law); TIG Ins. Co. v. Sedgwick James of Washington, 184 F. Supp. 2d 591 (S.D. Tex. 2001), aff'd, 276 F.3d 754 (5th Cir. 2002) (applying Texas law); G.E. Tignall & Co. v. Reliance Nat. Ins. Co., 102 F. Supp. 2d 300, 304 (D. Md. 2000) (applying Maryland law); Am. Country Ins. Co. v. Kraemer Bros., 699 N.E.2d 1056, 1060 (Ill. 1998).

Notably, the courts that refused to apply the doctrine of estoppel to extend coverage found that the supposed additional insureds' reliance on the certificates was not reasonable due to disclaimers printed on the certificates.  See Mulvey Const., 571 F. App'x at 159 ("The certificates of insurance included [a] direct and specific disclaimer . . . . We, like the district court, must conclude that Virginia would not recognize the use of estoppel to change the policy in the circumstances of this case."); TIG Ins. Co., 184 F. Supp. 2d at 597–98 ("The certificate of insurance [] clearly states that the certificate is issued 'as a matter of information only,' and that it does not purport to 'amend, extend, or alter' the terms of any insurance policies listed therein."); Kraemer Bros., 699 N.E.2d at 1060 ("If [a] certificate includes a disclaimer, the insured may not rely on representations made in the certificate but must look to the policy itself to determine the scope of coverage.").

DRB has presented two certificates of insurance, which DRB claims Marcinak provided to DRB to indicate that the Penn National Policy extended coverage to DRB as an additional insured.  DRB contends that Marcinak's insurance agent, Jordan & McCallum Company, who procured the Penn National Policy, issued these certificates of

insurance to DRB.[5]  Indeed, the certificates indicate that DRB is covered as an additional

insured.  See ECF No. 74-9.  Importantly, though, the certificates all contain two explicit

disclaimers, located at the top of each document in conspicuous script:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION
> ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE
> HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR
> NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE
> AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF
> INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN
> THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR
> PRODUCER, AND THE CERTIFICATE HOLDER.
>
> …
>
> IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the
> policy(ies) must be endorsed. . . . A statement on this certificate does not
> confer rights to the certificate holder in lieu of such endorsements.

Id. at 1 and 2.

The court finds that these conspicuous disclaimers preclude a finding of estoppel

because they render DRB's reliance upon the certificates of insurance unreasonable.  Not

only do the certificates indicate that they are issued as "matter[s] of information only",

but they also give clear and specific notice to supposed additional insureds that the

certificates "do[] not confer rights" without an endorsement to the policy.  Further, the

disclaimers appear in conspicuous font on the top of each certificate.  The court cannot

imagine that South Carolina law would stretch the doctrine of equitable estoppel so far as

to cover reliance upon certificates with such clear and conspicuous disclaimers.

---

[5] The parties dispute whether Jordan & McCallum Company is an agent of Penn
National, such that its actions would be attributable to Penn National.  However, the court
declines to address this issue because even assuming arguendo that Jordan & McCallum
Company is an agent of Penn National, the court still finds that the issuance of the
certificates of insurance do not confer coverage to DRB, as discussed in detail below.

DRB relies upon two cases for its argument that the certificates of insurance confer coverage by estoppel: Sumitomo Marine & Fire Ins. Co. of Am. v. S. Guar. Ins. Co. of Georgia, 337 F. Supp. 2d 1339 (N.D. Ga. 2004) and Marlin v. Wetzel Cty. Bd. of Educ., 569 S.E.2d 462, 472 (W. Va. 2002). Because neither case analyzes the issue of the certificates' disclaimers, the court finds these cases unconvincing.

In Sumitomo, the court held that an insurer was estopped from denying coverage to a supposed additional insured where the insurer's agent issued the supposed additional insured certificates of insurance indicating that coverage existed. 337 F. Supp. 2d at 1355–56. The court reasoned that the insurer's agent had both actual and apparent authority from the insurer to issue the certificates and that the supposed additional insured reasonably relied thereon. The court reasoned that although a certificate of insurance is generally regarded as mere evidence of coverage, certificates in the construction context are used by general contractors as evidence that they are covered under their subcontractor's CGL policy. Without a certificate, the court posited, a general contractor would not permit its subcontractor to perform work. Therefore, the court found the general contractor's reliance on a certificate of insurance reasonable.

The court in Marlin, applying the same concepts to West Virginia law, stated:

> a certificate of insurance is evidence of insurance coverage, and is not a separate and distinct contract for insurance. However, because a certificate of insurance is an insurance company's written representation that a policyholder has certain insurance coverage in effect at the time the certificate is issued, the insurance company may be estopped from later denying the existence of that coverage when the policyholder or the recipient of a certificate has reasonably relied to their detriment upon a misrepresentation in the certificate.

569 S.E.2d at 472–73. Neither of the cases on which DRB relies analyzed the issue of the certificates' disclaimers beyond a passing reference, Sumitomo, 337 F. Supp. 2d at

1355 (stating only, "[d]efendants then point out that the Certificates of Insurance also expressly included a disclaimer that they are for information purposes only and do not amend the respective policies of insurance. The parties have not submitted any binding authority squarely on point."), and this court cannot ascertain the nature or scope of the disclaimers that were present in those cases. As such, neither case gives the court reason to find that DRB's reliance on the certificates of insurance was reasonable in the face of the clear and conspicuous disclaimers printed upon each. Therefore, the court finds that the certificates of insurance did not confer additional insured coverage to DRB through estoppel.

### C. Penn National's Failure to Provide DRB with a Copy of the Policy

Additionally, DRB argues that Penn National cannot rely upon a policy provision to exclude it from coverage when it did not produce a copy of the policy to DRB. This argument is unconvincing, as are the cases DRB cites in support. DRB argues that "the Penn National Defendants [] cannot rely upon policy exclusions when [the exclusions] have not been communicated to [DRB]." ECF No. 159 at 12. As an initial matter, the court points out that the Penn National Policy does not exclude DRB from coverage by means of an exclusion to the policy. An exclusion is an area of coverage that the insurer removes from a policy that would otherwise be covered by the policy. See EXCLUSION, Black's Law Dictionary (11th ed. 2019). The Penn National Policy, conversely, never extended coverage to DRB with respect to Marcinak's work on the Foxbank project in the first place. Thus, DRB's lack of insurance coverage is not the

result of an exclusion.  The cases on which DRB relies suffer from a similar fatal flaw and miss the mark.[6]

In each of the cases on which DRB relies, an insurer failed to provide a copy of the policy to its insured.  Instead, the insured held a certificate of insurance.  Under those circumstances those courts found that the certificates held by the insureds controlled over exclusions found in the policy, to which the insureds did not have access.  The present circumstances are different.  Here, the question is whether DRB is an insured at all, not whether a certain occurrence is covered or excluded under the policy.  Further, unlike the plaintiffs in those cases, the court has determined that DRB is not an insured with respect to the Penn National Policy.  It would make little sense for the court to hold that Penn National was required to provide a copy of the Penn National Policy to DRB, a third party who the court has found is not covered under the Penn National Policy.  The doctrine employed by these cases is plainly inapplicable to the case at hand.  Therefore, the court rejects this argument.

In sum, the court denies DRB's motion for partial summary judgment because DRB is not entitled to coverage as an additional insured to the Penn National as a matter of law.  As such, the court grants Penn National's motion for summary judgment with respect to DRB's declaratory judgment claim.

---

[6] In support of its argument, DRB cites to:  <u>Brown Mach. Works & Supply Co. v. Ins. Co. of N. Am.</u>, 659 So. 2d 51, 56 (Ala. 1995); <u>Moore v. Energy Mut. Ins. Co.</u>, 814 P.2d 1141, 1144 (Utah Ct. App. 1991); and <u>J. M. Corbett Co. v. Ins. Co. of N. Am.</u>, 357 N.E.2d 125, 128 (Ill. App. 1976).  Because each case suffers from the same fatal flaw, the court discusses them together.

**D. DRB's Remaining Claims**

Having resolved the legal issues put before it, the court must now determine the practical effect of its findings. By way of clarification, DRB and Penn National have both filed motions for summary judgment. DRB's motion requests summary judgment solely on its declaratory judgment claim, which asks the court to find that Penn National has a duty to defend and indemnify DRB in the underlying lawsuit. Penn National's motion, on the other hand, asks the court to grant summary judgment "with regard to DRB's claims against it." ECF No. 118 at 1. Despite posturing its motion as one for summary judgment on all of DRB's claims, Penn National only makes substantive arguments with respect to DRB's declaratory judgment claim, regarding Penn National's alleged duty to defend. Penn National does not specifically request summary judgment on DRB's other claims for bad faith, indemnification, or promissory estoppel. Nor does Penn National's motion explicitly address these claims.

However, this order's analysis into DRB's declaratory judgment claim has required the court to determine issues that are part and parcel to DRB's promissory estoppel claim. Specifically, this order has found that Penn National is not estopped from denying coverage to DRB because DRB's reliance on the certificates of insurance was unreasonable as a matter of law. This finding goes to the very heart of DRB's promissory estoppel claim. "The elements of promissory estoppel are (1) an unambiguous promise by the promisor; (2) reasonable reliance on the promise by the promisee; (3) reliance by the promisee was expected by and foreseeable to the promisor; and (4) injury caused to the promisee by his reasonable reliance." N. Am. Rescue Prod., Inc. v. Richardson, 769 S.E.2d 237, 241 (S.C. 2015) (citing Davis v. Greenwood Sch.

<u>Dist. 50</u>, 634, 620 S.E.2d 65, 67 (S.C. 2005)). DRB's claim for promissory estoppel cannot stand because this order finds that its reliance on the certificates of insurance was not reasonable. Therefore, the court's finding renders the claim untenable.

Next, the court turns to DRB's bad faith claim. "The elements of a bad faith refusal to pay action are (1) the existence of a contract of insurance between the parties; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action; and (4) causing damage to the insured." <u>Crossley v. State Farm Mut. Auto. Ins. Co.</u>, 415 S.E.2d 393, 396–97 (S.C. 1992). "But if there is a reasonable ground for contesting a claim, there is no bad faith." <u>Helena Chem. Co. v. Allianz Underwriters Ins. Co.</u>, 594 S.E.2d 455, 462 (S.C. 2004) (quoting <u>Crossley v. State Farm Mut. Auto. Ins. Co.</u>, 415 S.E.2d 393, 397 (S.C. 1992) (internal quotation marks omitted). This order finds that DRB is not entitled to coverage as an additional insured to the Penn National Policy. Therefore, Penn National clearly had reasonable grounds for its refusal to provide defense and indemnification. Thus, DRB's claim for bad faith fails.

As such, the court finds itself at a procedural fork in the road[7] and must choose between the lesser of two evils. The court must either grant summary judgment on DRB's claims of promissory estoppel and bad faith in favor of a party who did not explicitly request it or deny summary judgment and send legally untenable claims to a jury. The court determines that the latter is the greater evil, so it proceeds with the former. Thus, because the court's findings necessitate it, the court grants summary

---

[7] As the sagacious Yogi Berra once said, "When you come to a fork in the road, take it."

judgment in favor of Penn National with respect to DRB's claims for promissory estoppel and bad faith.

The same cannot be said for DRB's remaining claim for indemnification / contribution. Although the court is unsure of the nature or validity of the indemnification DRB seeks—be it contractual or equitable—the court is unwilling to grant summary judgment on a claim that may be viable in favor of a party who has not explicitly requested it. Without such a request or findings that necessitate summary judgment, the court declines to consider DRB's claim for indemnification / contribution at present and denies Penn National's motion for summary judgment with respect to the same.

**E. The Sloan Doctrine**

Finally, Penn National argues that DRB is precluded from all recovery based on the <u>Sloan</u> doctrine.[8] <u>See</u> <u>Sloan Const. Co. v. Cent. Nat. Ins. Co. of Omaha</u>, 236 S.E.2d 818 (S.C. 1977). The Sloan doctrine holds that:

> where two companies insure the identical risk and both policies provide for furnishing the insured with a defense, neither company, absent a contractual relationship, can require contribution from the other for the expenses of the defense where one denies liability and refuses to defend. The duty to defend is personal to both insurers; neither is entitled to divide the duty.

<u>Id.</u> at 820. Under the <u>Sloan</u> doctrine, if an insured receives a full defense from one insurer in an underlying lawsuit, it may not seek contribution or indemnification from another insurer who refused to defend. According to the well-reasoned logic of the <u>Sloan</u>

---

[8] While Penn National applies its other arguments solely to DRB's declaratory judgment claim, it argues that under the <u>Sloan</u> doctrine, "Plaintiffs['] claims for recovery against Penn National must fail . . . ." ECF No. 140 at 19. Therefore, the court will construe this argument as applying to each of DRB's claims, including its claim for indemnity / contribution, even though Penn National fails to explicitly so state.

court, in South Carolina, an insured who receives a full defense from one insured is not injured by its other insurer's failure to defend.

Here, Penn National argues that DRB is barred from all recovery in this case because DRB "has been provided a full and complete defense by [its] respective insurance carriers since as early as April 2015." ECF No. 140 at 19. However, Penn National has presented no evidence to support its allegations, aside from an answer to an interrogatory in which DRB states that has incurred significant expenses in its defense of the underlying lawsuit and has only been reimbursed a portion of those expenses by its insurance carrier. In response, DRB argues that it has, in fact, not been provided with a full defense and that the <u>Sloan</u> doctrine is inapplicable.[9] The court agrees and declines to grant summary judgment based upon such limited and tenuous evidence. Therefore, the court rejects Penn National's argument.

In sum, after the court's resolution of the instant motions, DRB's indemnification / contribution claim survives and will proceed to trial; DRB's declaratory judgment, promissory estoppel, and bad faith causes of action are resolved on summary judgment in favor of Penn National.

---

[9] DRB also claims that its primary insurer did not indemnify it for a significant period of time after the Dickerson lawsuit was filed. As a result, DRB claims, its primary insurer did not tender a full and complete defense and it incurred significant damages.

## IV.   CONCLUSION

For the foregoing reasons the court **DENIES** plaintiffs' motion for summary judgment, and **GRANTS** defendant's motion with respect to plaintiffs' first, second, and fourth causes of action and **DENIES** defendant's motion with respect to plaintiffs' third cause of action.

      **AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**April 3, 2020**
**Charleston, South Carolina**