IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| DAN RYAN BUILDERS WEST VIRGINIA, LLC, *f/k/a* DAN RYAN BUILDERS INC. and DAN RYAN BUILDERS SOUTH CAROLINA, LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | No. 2:18-cv-00589-DCN **ORDER** |
| vs. | ) ) | |
| MAIN STREET AMERICA ASSURANCE COMPANY, SELECTIVE INSURANCE GROUP, INC., THE CINCINNATI INSURANCE COMPANY, FRANKENMUTH MUTUAL INSURANCE CO., STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, PENNSYLVANIA NATIONAL SECURITY INSURANCE COMPANY, and PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on plaintiffs Dan Ryan Builders West Virginia, LLC and Dan Ryan Builders South Carolina, LLC's (collectively, "DRB") motion for partial summary judgment, ECF No. 75, and defendant State Automobile Mutual Insurance Company's ("State Auto"), motion for summary judgment, ECF No. 135. For the reasons set forth below, the court grants DRB's motion for partial summary judgment and denies State Auto's motion for summary judgment.

**I. BACKGROUND**

This insurance dispute arises from a construction project managed by DRB, a construction company that primarily builds new homes. DRB secured a contract to

1

construct new homes in a community known as the Foxbank Subdivision in Berkeley County, South Carolina ("Foxbank" or the "Foxbank Subdivision"). In order to perform this contract, DRB hired various subcontractors. The defendants in this case are insurers of those subcontractors. Relevant to the instant motions, State Auto is the insurer of Southern Atlantic Construction, LLC ("Southern Atlantic"), one of DRB's subcontractors. Southern Atlantic maintained a commercial general liability ("CGL") policy with State Auto (the "State Auto Policy") during the time that it performed work for DRB on Foxbank.

On April 24, 2014, two Foxbank Subdivision homeowners filed suit against DRB in the Court of Common Pleas for Berkeley County, South Carolina (the "Dickerson Lawsuit"). The Dickerson Lawsuit is a class action on behalf of other similarly situated owners of homes that were built by DRB. The lawsuit alleges property damage, such as "slabs and building components moving and/or cracking . . repeatedly and/or continuously and continu[ing] to occur causing damage to building components, the finish and structural elements of the home[s]." ECF No. 54-1 at 9. On March 22, 2017, more Foxbank homeowners filed a second action against DRB and several subcontractors, alleging similar harms as in the Dickerson Lawsuit (the "Tipton Lawsuit"). The two lawsuits have been consolidated in state court (the "underlying lawsuit").

On or around December 7, 2017, DRB tendered written demand upon Southern Atlantic for defense and indemnity with respect to the Tipton lawsuit. DRB's written demand, although sent to Southern Atlantic's counsel and not State Auto, demanded defense and indemnity from Southern Atlantic's insurers. Neither Southern Atlantic nor

State Auto responded. DRB did not make a demand upon Southern Atlantic or State Auto with respect to the earlier-filed Dickerson lawsuit. To date, State Auto has not provided a defense or indemnity to DRB in the underlying suit.

On March 1, 2018, DRB filed this lawsuit against the insurers of the subcontractors who allegedly performed work on the Foxbank project, seeking a declaratory judgment that the underlying lawsuits set forth claims that are covered under each of defendant's CGL policies and that defendants have a duty to defend and indemnify DRB in these underlying lawsuits. DRB also brought claims for bad faith refusal to pay first party benefits and for indemnification / contribution. On September 27, 2018, DRB filed an amended complaint, adding a fourth cause of action for promissory estoppel, arguing that defendants allowed certificates of insurance to be issued to DRB upon which DRB reasonably relied.

On October 3 and 26, 2018, DRB filed motions for partial summary judgment against all insurer-defendants, asking the court to declare that it is entitled to coverage. ECF Nos. 54, 55, 56, 57, 74, and 75, respectively. Each of the insurer-defendants have since also filed motions for summary judgment. ECF Nos. 118, 135, 138, 139, 140, and 143. The court held a hearing on DRB's motions on January 8, 2019 and a hearing on the defendants' motions on August 8, 2019. In all, twelve summary judgment motions await the court's resolution.

This order resolves two of those motions. On October 26, 2018, DRB filed a motion for partial summary judgment on its declaratory judgment claim against State Auto. ECF No. 75. On November 23, 3018, State Auto responded, ECF No. 96, and on December 21, 2018, DRB replied, ECF No. 115. On May 9, 2019, State Auto filed a

cross-motion for summary judgment on all of DRB's claims against it. ECF No. 135. On May 23, 2019 DRB responded, ECF No 137, and on May 30, 2019, State Auto replied, ECF No. 137. Thus, this matter is ripe for the court's review.

## II. STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, "'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. When the party moving for summary judgment does

not bear the ultimate burden of persuasion at trial, it may discharge its burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

Any reasonable inferences are to be drawn in favor of the nonmoving party. Anderson, 477 U.S. at 255, Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir. 2012). However, to defeat summary judgment, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. See Anderson, 477 U.S. at 252; Stone, 105 F.3d at 191. Rather, "a party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)). If the adverse party fails to provide evidence establishing that the fact finder could reasonably decide in his favor, then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary requirements imposed by the substantive law.'" Id. (quoting Anderson, 477 U.S. at 248).

### III. DISCUSSION

In its motion for partial summary judgment, DRB argues that State Auto has a duty to defend and indemnify DRB in the underlying lawsuit on two alternative grounds. First, it argues that the terms of the State Auto Policy extend coverage to DRB as an "additional insured" to the policy pursuant to an additional insured endorsement. In the alternative, DRB argues that the issuance of a certificate of insurance by State Auto's

5

insurance agent conferred upon it "additional insured" coverage by estoppel, irrespective of the terms of the State Auto Policy. In its cross-motion for summary judgment, State Auto argues that DRB is not entitled to coverage for the claims contained in the underlying lawsuit because the State Auto Policy expressly limits additional insured coverage to ongoing operations coverage, because DRB failed to comply with the State Auto Policy's notice requirements, and because DRB has not incurred damages as a result of State Auto's failure to defend. Therefore, State Auto maintains, it has no duty to defend DRB in the underlying lawsuit. For the following reasons, the court grants DRB's motion for summary judgment and denies State Auto's motion for summary judgment.

### A. Coverage Under the State Auto Policy

"An insurance policy is a contract between the insured and the insurance company, and the terms of the policy are to be construed according to contract law." Auto Owners Ins. Co. v. Rollison, 663 S.E.2d 484, 487 (S.C. 2008). "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." Beaufort Cty. Sch. Dist. v. United Nat'l Ins. Co., 709 S.E.2d 85, 90 (S.C. Ct. App. 2011) (citing Schulmeyer v. State Farm Fire & Cas. Co., 579 S.E.2d 132, 134 (S.C. 2003)). "If the contract's language is clear and unambiguous, the language alone, understood in its plain, ordinary, and popular sense, determines the contract's force and effect." Id. (citing Schulmeyer, 579 S.E.2d at 134). However, an insurance contract which is "in any respect ambiguous or capable of two meanings" must be construed strictly against its drafter, the insurer. Reynolds v. Wabash Life Ins. Co., 161 S.E.2d 168, 169 (S.C. 1968)).

As the basis of its declaratory judgment claim, DRB argues that it is entitled to coverage under the terms of the State Auto Policy. Although the State Auto Policy is an insurance policy between State Auto and its primary insured, Southern Atlantic, DRB claims it is entitled to coverage as an "additional insured" under the policy's endorsement, titled "Additional Insured – Owners, Lessees, or Contractors – Automatic Status When Required in a Construction Agreement", (hereinafter referred to as the "Additional Insured endorsement"). The endorsement states:

> **A. Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" caused, in whole or in part, by:
>
> 1. Your acts or omissions; or
>
> 2. The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured.

ECF No. 75-5 at 48. Stated less enigmatically, the State Auto Policy extends additional insured coverage to DRB for "property damage" caused by Southern Atlantic if a written contract existed between DRB and Southern Atlantic that required Southern Atlantic to add DRB as an additional insured to the State Auto Policy.

DRB has presented a trade contract between it and Southern Atlantic that DRB claims satisfies the terms of the Additional Insured endorsement and entitles DRB to additional insured coverage as a matter of law. See ECF No. 75-4 at 4–18. Indeed, the parties do not dispute that Article 9 of the General Conditions to the trade contract

7

required Southern Atlantic to add DRB as an additional insured to Southern Atlantic's CGL policy:

> (c) The insurance maintained by [Southern Atlantic] additionally shall comply with the following requirements:
>
> 1. DRB shall be added as an Additional Insured on General Liability, Auto Liability and Umbrella policies. Additional insured coverage is required to be per ISO CG2010 11/85 or its equivalent (including completed operations) and coverage is to be on a Primary basis.

ECF No. 75-4 at 14. Thus, there is no dispute that DRB was an additional insured to the State Auto Policy during the time that Southern Atlantic was performing work at Foxbank.[1]

In response, however, State Auto argues that while DRB had "status" as an additional insured while Southern Atlantic was performing work at Foxbank, that status expired when Southern Atlantic completed its operations. Therefore, State Auto argues, the Additional Insured endorsement does not extend coverage to DRB for the claims alleged in the underlying lawsuit. State Auto's premise is correct, but its conclusion is not.

The Additional Insured endorsement expressly limits the scope of additional insured coverage: "A person's or organization's status as an additional insured under this

---

[1] "State Auto acknowledges that, when viewed in the light most favorable to [DRB], the insurance provisions of the subcontract require Southern Atlantic to name DRB as an additional insured under Southern Atlantic's commercial general liability insurance. Moreover, for the purposes of this motion, State Auto also acknowledges that the A[dditional] I[nsured] endorsement is applicable to those entities that Southern Atlantic has agreed to name as an additional insured in a written contract." ECF No. 135 at 8.
Although State Auto concedes this point in its own motion for summary judgment, it does not argue otherwise in response to DRB's motion for partial summary judgment. As such, the court considers the issue of whether DRB was an additional insured to the State Auto Policy to be undisputed.

endorsement ends when [Southern Atlantic's] operations for that additional insured are completed." ECF No. 75-5 at 48. The endorsement also includes the following "additional exclusions":

> This insurance does not apply to:
>
> 2. "Bodily injury" or "property damage" occurring after:
>
> a. All work . . . to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or
>
> b. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Id.

State Auto contends that these provisions exclude the underlying lawsuit from coverage because "[a]ny insured status enjoyed by DRB was extinguished at the time [Southern Atlantic]'s construction work was completed and/or put to its intended use." ECF No. 135 at 9. To be sure, State Auto is correct that the these provisions "expressly limit[] the time and scope of any insured status which may be afforded to DRB." ECF No. 135 at 6. Indeed, DRB's status as an additional insured expired upon the completion of Southern Atlantic's work. However, the State Auto Policy makes clear that an insured receives coverage for claims that arise from an "occurrence" or "property damage" that occurs during the policy period, even if the claim that arises therefrom is made after the policy period. In other words, the critical question here is not whether DRB had additional insured status at the time the underlying lawsuit was filed, but whether DRB was an additional insured when the property damage alleged in the underlying lawsuit

occurred. It is a clear concept of insurance law that an insured may be owed a duty to defend even after his status as an insured has expired.

Because DRB was an additional insured to the State Auto Policy, the general terms of the insuring agreement apply to DRB, except where they conflict with the Additional Insured endorsement. See State Farm Mut. Auto. Ins. Co. v. James, 522 S.E.2d 345, 348 (S.C. Ct. App. 1999) (defining the term "insured" in an insurance policy to mean any person covered under the agreement). The State Auto Policy covers "property damage" where the "'property damage' is caused by an 'occurrence' . . . ." ECF No. 75-5 at 52. The insuring agreement states that "'property damage' which occurs during the policy period . . . includes any continuation, change or resumption of that . . . 'property damage' after the end of the policy period." Id. The State Auto Policy defines "property damage" as "physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it." Id. at 65. It is well-settled in South Carolina that "property damage" that results from allegedly negligent construction "occurs", for insurance purposes, at the time of the alleged negligence. Crossmann Communities of N. Carolina, Inc. v. Harleysville Mut. Ins. Co., 717 S.E.2d 589, 594 (S.C. 2011) (finding that damage caused by allegedly negligent construction constituted "property damage" and occurred at the time of the negligence); Auto Owners Ins. Co. v. Newman, 684 S.E.2d 541, 545 (S.C. 2009) (". . . the subcontractor's negligence resulted in an 'occurrence' falling within the CGL policy's initial grant of coverage for the resulting 'property damage' to the home's framing and exterior sheathing."). Therefore, the State Auto Policy unambiguously extends coverage to DRB for property damage allegedly caused

by Southern Atlantic that occurred (1) during the State Auto Policy period and (2) while DRB had additional insured status, i.e. while Southern Atlantic was performing work on Foxbank. These terms of the insuring agreement do not conflict with the Additional Insured endorsement, which states that it does not cover "property damage occurring after" Southern Atlantic's work is completed. ECF No. 75-5 at 48. As such, the terms of the Additional Insured endorsement and the insuring agreement are complementary, not conflicting.

DRB became an additional insured to the State Auto Policy on March 21, 2013, the date that DRB and Southern Atlantic executed the trade contract. The State Auto Policy expired on September 15, 2013. Therefore, DRB was an additional insured to the State Auto Policy with respect to work performed by Southern Atlantic on Foxbank between March 21, 2013 and September 15, 2013. State Auto concedes that Southern Atlantic performed work at Foxbank on three homes involved in the underlying lawsuit. State Auto contends that for two of those homes, Southern Atlantic's work began after the State Auto Policy expired. The other home, however, received its certificate of occupancy on August 13, 2013, and State Auto does not contest that Southern Atlantic performed work on that home at some point during the State Auto Policy Period. Thus, so long as the underlying lawsuit alleges property damages that arose from Southern Atlantic's work on the relevant home, that claim receives additional insured coverage under the State Auto Policy.

The allegations in the underlying lawsuit aver property damage to the homes at Foxbank, including the relevant home, as a result of the alleged negligence of DRB, Southern Atlantic, and a slew of other subcontractors. The underlying complaint contains

allegations of negligent foundational work, which was the work Southern Atlantic performed at Foxbank. In short, the State Auto Policy extends coverage to DRB for the claims contained in the underlying lawsuit so long as those claims allege negligence against Southern Atlantic that occurred while Southern Atlantic was performing work at Foxbank. Because the underlying lawsuit alleges that Southern Atlantic was negligent in its performance of foundational work on the relevant house, the underlying lawsuit is covered under the Additional Insured endorsement. State Auto's premise that DRB no longer has status as an additional insured under the State Auto Policy is correct; however, its conclusion that DRB's non-insured status precludes coverage for the claims asserted in the underlying lawsuit is not. Thus, the court finds that the State Auto Policy extends additional insured coverage to DRB for the claims contained in the underlying lawsuit.[2]

### B. Notice

In its own motion for summary judgment, State Auto argues that it has no duty to provide DRB with a defense to the Dickerson lawsuit because DRB never provided notice to State Auto of that lawsuit and that its duty to provide a defense to the Tipton lawsuit did not arise until DRB sent notice of that lawsuit. ECF No. 135 at 11. Specifically, State Auto claims that DRB has not incurred damages with respect to the Dickerson lawsuit because it never tendered the defense of the lawsuit to State Auto and that DRB did not incur damages with respect to the Tipton lawsuit until December 7, 2017, when DRB sent a letter notifying Southern Atlantic's counsel of those claims. State Auto's arguments misunderstand the question before the court at this juncture.

---

[2] Finding that DRB is entitled to coverage under the terms of the State Auto Policy, the court need not reach the issue of whether the certificates of insurance independently conferred additional insured coverage to DRB.

An insurer's duty to defend is separate and distinct from its duty to indemnify. S.C. Med. Malpractice Liab. Ins. Joint Underwriting Ass'n v. Ferry, 354 S.E.2d 378, 380 (S.C. 1987) (citing Sloan Construction Co., Inc. v. Central National Ins. Co. of Omaha, 236 S.E.2d 818 (S.C. 1977)). In South Carolina, "the duty to defend arises when an underlying suit is brought against the insured with allegations that are arguably within the scope of the insurance policy's coverage."[3] Episcopal Church in S.C. v. Church Ins. Co. of Vermont, 53 F. Supp. 3d 816, 828 (D.S.C. 2014) (citing Allstate Ins. Co. v. Wilson, 193 S.E.2d 527, 530 (S.C. 1972)). Therefore, "an insurer's duty to defend is triggered when the underlying claim is brought and thus pre-exists any obligation on the part of the insured as to notice or compliance with the voluntary payment provision of an insurance contract." Id.

State Auto's argument is misplaced for two reasons. First, the issue of damages is irrelevant to the issue of whether State Auto has a duty to defend DRB. As a factual matter, and as the court explained above, the Tipton and Dickerson lawsuits have been consolidated into a single lawsuit, the underlying lawsuit. The issue of whether State Auto has a duty to defend DRB with respect to the underlying lawsuit has nothing to do with the procedural history of the underlying lawsuit. The question for the court is whether State Auto has a duty to defend DRB in the underlying lawsuit as it currently stands. Moreover, in South Carolina, notice is "not a condition precedent" to an insured's duty to defend. Id. For an insurer to deny coverage based on an insured's

---

[3] Because the court has found that it is an insured under the policy, DRB does not have the burden to show that it is entitled to coverage under the State Farm Policy. Instead, the usual cannons of insurance law with respect to an insurer's duty to defend apply.

failure to provide notice of a claim, the insurer has the burden to show that the failure to notify caused "substantial prejudice" to the insurer's rights. Id. (quoting Vermont Mut. Ins. Co. v. Singleton By & Through Singleton, 446 S.E.2d 417, 421 (S.C. 1994)). State Auto has not argued that it has been substantially prejudiced by DRB's failure to provide notice; instead, it merely argues that DRB has not sustained any damages as a result of its failure to provide State Auto with timely notice. Even if true, this fact does not extinguish State Auto's duty to defend DRB in the underlying suit. While State Auto's damages argument might be relevant to its duty to indemnify DRB, it is irrelevant to its duty to defend. Therefore, the court rejects State Auto's argument.

### C. Sloan Doctrine

Finally, in support of its summary judgment motion, State Auto argues that it "cannot be held liable for breach of contract or bad faith because DRB has not sustained any damages." ECF No. 135 at 11.[4] Although State Auto does not explicitly state, the court takes this argument as an invocation of the so-called "Sloan doctrine", which several of State Auto's co-defendants have similarly invoked. Like the court found with respect to its co-defendants, State Auto does not present evidence sufficient for the court to grant summary judgment under the Sloan Doctrine.

The Sloan doctrine holds that:

> where two companies insure the identical risk and both policies provide for furnishing the insured with a defense, neither company, absent a contractual relationship, can require contribution from the other for the expenses of the defense where one denies liability and refuses to defend. The duty to defend is personal to both insurers; neither is entitled to divide the duty.

---

[4] Although DRB does not allege breach of contract as a cause of action, the court interprets State Auto's argument to mean that State Auto has not breached the State Auto Policy by failing to defend DRB—in other words, that State Auto does not have a duty to defend DRB.

Sloan Const. Co. v. Cent. Nat. Ins. Co. of Omaha, 236 S.E.2d 818, 820 (S.C. 1977). Under the Sloan doctrine, if an insured receives a full defense from one insurer in an underlying lawsuit, it may not seek contribution or indemnification from another insurer who refused to defend. According to the well-reasoned logic of the Sloan court, in South Carolina, an insured who receives a full defense from one insured is not injured by its other insurer's failure to defend.

Here, State Auto has presented no evidence to support its allegations, aside from a response to a request for admissions in which DRB states that its primary insured has provided it with a defense in the underlying suit "since April 2015." ECF No. 135-6 at 4. In response, DRB contends that it has nevertheless "incurred substantial damages" in the underlying lawsuits and has "set forth these damages in discovery responses to the defendants . . . ." ECF No. 136 at 28. Indeed, DRB has presented evidence that it has incurred damages as a result of State Auto's failure to defend.[5] The court cannot grant summary judgment in favor of State Auto based upon such limited and tenuous evidence. Therefore, the court rejects State Auto's argument.

In sum, the court finds that the State Auto Policy provides coverage to DRB for the underlying lawsuit. Additionally, the court rejects State Auto's argument that DRB's failure to provide notice of the claims to State Auto extinguishes its duty to defend. Likewise, the court rejects State Auto's argument under the Sloan Doctrine. As such, the

---

[5] DRB also claims that its primary insurer did not indemnify it for a significant period of time after the Dickerson lawsuit was filed. As a result, DRB claims, its primary insurer did not tender a full and complete defense and it incurred significant damages.

court finds that State Auto has a duty to defend DRB in the underlying lawsuit and grants DRB's motion for partial summary judgment.

### D. DRB's Remaining Claims

Having resolved the legal issues put before it, the court must now determine the practical effect of its findings. By way of clarification, DRB and State Auto have both filed motions for summary judgment. DRB's motion requests summary judgment solely on its declaratory judgment claim, which asks the court to find that State Auto has a duty to defend DRB in the underlying lawsuit. State Auto's motion, on the other hand, asks the court to grant summary judgment "in its favor as to Plaintiffs' claims against State Auto." ECF No. 135 at 1. Despite posturing its motion as one for summary judgment on all of DRB's claims, State Auto only makes substantive arguments with respect to DRB's declaratory judgment claim, regarding State Auto's alleged duty to defend. State Auto does not specifically request summary judgment on DRB's other claims for bad faith, indemnification, or promissory estoppel. Nor does State Auto's motion explicitly address these claims.[6] The court is unwilling to grant summary judgment to a party who did not explicitly request it. Without such a request or findings that otherwise necessitate it, the court denies State Auto's motion for summary judgment with respect to DRB's claims of bad faith, promissory estoppel, and indemnification / contribution.

---

[6] Discussed above, State Auto's motion does make passing reference to DRB's bad faith claim in its Sloan Doctrine argument. However, State Auto does not address DRB's bad faith claim in a meaningful way the might provide the court with a ground to grant summary judgment as to the claim. Therefore, the court finds it unnecessary to address that claim here.

## IV. CONCLUSION

For the foregoing reasons the court **GRANTS** plaintiffs' motion for partial summary judgment, and **DENIES** defendant's motion for summary judgment.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**April 3, 2020
Charleston, South Carolina**